Because they're in trial. We denied it but invited them to argue by telephone or video from Montana where their trial is going on. So we'll hear that one first. United States v. Schonenberg. Counsel? Thank you, Your Honor. For the record, my name is Paul Bistall. I'm appearing on behalf of the appellant, Jeremiah Schonenberg in this matter. This appeal comes before the court because of the court's denial and refusal to allow cross-examination into important parts of the plea agreement of a witness who was the government's primary percipient witness against Mr. Schonenberg in alleged marijuana conspiracy. And the terms and conditions under which the defense counsel, which I desire to cross-examine this witness, whose name was Robert Woodbury, provided that if in the sole judgment of the United States Attorney's Office, Mr. Woodbury has provided substantial assistance, and of course that was pursuant to Rule 35, substantial assistance in the prosecution of others. Counsel? Yes. This is Judge Kleinfeld. Could you help me with the second issue in the case? Assume that the district court erred. Could you tell me, do we look for whether it's harmless beyond a reasonable doubt or is there a lesser standard applicable? And after telling us the standard, could you tell us why that standard, in this case, requires reversal? Well, Your Honor... Can you relate the evidence that you could not put in to the rest of the evidence in the case? Your Honor, I think that the standard has set forth in... I've cited a Third Circuit case, and that's the Chandler case, and I know it's not binding upon this court, but I think that the standard is, because it's a constitutional error, it has to go beyond harmless. If there's a constitutional error, which in this case we're alleging... Is there a reason for not citing a Ninth Circuit case? Well, I couldn't find one, Your Honor. I looked and looked. So assuming we follow that standard, what's the rest of the evidence as relates to this evidence that bears on harmfulness or harmlessness? Well, in my view, and this is occurring in numerous cases in which the government has provided benefits to a witness. In fact, the trial that we're doing right now, it's a big issue in this trial. But in my view, and what we have here is the plea agreement, and paragraph 16 of the plea agreement, which says that the parties understand that should the defendant knowingly provide incomplete or untruthful statements or information pursuant to the agreement, then basically the agreement is void, and the witness will not get his Rule 35 motion. And what's important about that is that those determinations... I don't think you understood my question. Okay. My question was, let's assume that the judge erred in keeping out the evidence. The issue was whether the defendant sold marijuana or not. And I want to know what other evidence is there that he sold marijuana or that he didn't sell marijuana. Well, in this case, Mr. Woodbury's right-hand man, Jeremiah Skidmore, testified that Jeremiah Schoenberg did not sell any of Woodbury's marijuana. This was corroborated by Mr. Schoenberg's girlfriend's testimony that he didn't sell it. So... What about the testimony of White, is Judge Nelson speaking? Pardon me? What about the testimony of White? Yeah, Tara White? Yes. Yes, Your Honor. In our view, she corroborated Mr. Schoenberg's position that Schoenberg did not sell any of Woodbury's marijuana. He received it, and it sat in his refrigerator for approximately one week, and he smoked some of it, but he did not sell it. And I think that's what Ms. White testified to in her trial. Mr. Schoenberg, at trial, took the witness stand, and he denied also having sold any of that marijuana. And so, ultimately, it became a factual question or a credibility question between Mr. Schoenberg and Mr. Woodbury, and we were not allowed to go into, during cross-examination, Mr. Woodbury's reasons for testifying as the government would have liked him to testify. Excuse me. This is Judge Fisher. Could you elaborate on that? You had a helpful syllogism in your reply brief at pages one and two, and it seems to me that while you were cut off from asking the ultimate question, perhaps there was some misunderstanding about the focus of it, there was a substantial amount of testimony, was there not, about the substantial cooperation and the fact that he had a lot to gain by cooperating. So what critically were you not allowed to get into that should tip the balance here? Well, Judge Siebel said, I'm not going to allow you to get into that because it was within the jury's province to determine credibility, to determine whether Mr. Woodbury was telling the truth. And I respectfully submit that that was incorrect because the plea agreement, paragraph 16, expressly stated that it was the government which determined whether this witness was testifying truthfully or not for purposes of cooperation, for purposes of receiving his Rule 35 motion. And if they did not determine that he was telling the truth, then arguably he would not get his Rule 35 motion. Wouldn't that be true whether or not that was in the agreement? If he lied, without that in the agreement, the government would have the right not to abide by the plea bargain. Wouldn't that be true? Well, I don't know whether they would have the right, but they would certainly have within the discretion the ability to either file it or not file it. But I guess what was important in this case was that it was Mr. Woodbury's subjective belief, based upon that provision in the plea agreement, whether he was going to be providing substantial assistance. And your theory, as I understand it, is that if he believed that the people he had to persuade was the government, not the jury, that he would tailor his testimony to what the government wanted to hear. And as long as they were content with him saying whatever it took to get a conviction, then that would be his testimony. Your Honor, you hit the nail on the head. That is exactly correct. That is exactly right. That is our theory. And in these drug cases, in other cases, we get witnesses who have entered into agreements with the government, whereby if they cooperate and provide substantial assistance, and of course substantial assistance in our view means conviction, they will get a Rule 35 motion. But on the other hand, if they do not, then they will not get that Rule 35 motion. And that is a great motivation for somebody who is in a federal penitentiary to fabricate and falsify testimony. I see that I have a minute and a half left, and I'll reserve the rest, Your Honor. Thank you, Counsel. Good morning. May it please the Court, my name is Jim Sikora. I'm an Assistant United States Attorney. Excuse me, this is Judge Fischer. I won't take this off your time. Can you see us? Yes, I can, Your Honor. Okay, fine. We can see you, and I don't know what you're seeing. I'm actually seeing a triple split screen. It appears like there's three cameras, Your Honor. Okay, we'll behave ourselves. I suspected that you were able to see me sitting behind Mr. Huberstall. Go ahead. My name is Jim Sikora. I'm Assistant United States Attorney. I was, in fact, trial counsel in this matter. And Mr. Huberstall and I both appreciate the courtesy of the Court allowing us to do this in this manner. The United States believes, Your Honor, that this is an extremely narrow issue. When you look at the actual questions that were asked by Mr. Huberstall and the restricted cross-examination by His Honor, Judge Siebel, Judge Siebel was concerned about one thing, and that was that Mr. Huberstall and his defendant was not going to point to our table and say it was Mr. Sikora or it was the United States government who was the arbiter or the person that was going to determine as to whether or not this witness was telling the truth. Counsel, the problem that I have is that there were, in a way, two trials going on. One was the trial of Schoenberg. For Schoenberg, the jury was the sole arbiter of who was telling the truth. The other wasn't exactly a trial, but it was a determination of whether the witness, Woodbury, was going to get prison time, and if so, how much. And for that, the sole arbiter was not the jury. The sole arbiter was the U.S. Attorney's Office. You, I suppose. So really, for purposes of determining whether Woodbury was telling the truth, the jury should have known that the sole arbiter, from the point of view of Woodbury's personal interests, was you. Your Honor, I think as pointed out in the testimony of Mr. Woodbury, he was not only required pursuant to the plea agreement to testify in this case, but I believe he made mention of 40 other co-defendants that he had. But I think Judge Siebel, in looking at the evidence and the specific questions that were asked, wanted to caution and is clear, he said, you go into bias, motive, you can talk about reductions, these sort of things. I don't want you in the instruct of the jury. You folks are the only ones who are going to make a determination. Yeah, but whether you're happy or not determines how much time he does. That's potentially correct, but whether it's in a plea agreement or not, Your Honor, there's always a potential of a Rule 35, and this panel is called upon to determine whether or not this type of back and forth is going to go on on any type of case, whether it be drugs or not, in which someone is cooperating. Why shouldn't the jury know that Woodbury is looking at potentially a lot of time, and how much he gets depends on whether the prosecution is happy with what he says? Well, I think he was allowed to ask those questions, Your Honor, and Mr. Woodbury answered. He said, I had a plea deal, and I negotiated a deal through my lawyer, without talking about specific years. Mr. Kristol was allowed to do that, Your Honor. A jury might just think it's a done deal. At this point, he has nothing to lose. Just say what he wants. Well, I think then you're walking the line of whether or not you're talking about if he's charged in the same conspiracy, if you're looking at man of a mandatory tend to life, the jury is now being exposed to potential penalties of another co-conspirator, and I think Judge Siebel had to weigh those factors in making this type of thing. But again, I believe his rulings are very narrow, Your Honor, if it pleases the Court. I suspect that most jury skepticism of defense testimony is based on their assumption about human nature, that people will say absolutely anything to avoid a really long time in prison. By defense testimony, you mean a defendant of focus group? That's true for Woodbury. I think that's probably else counsel that worries me about this case. The only person who testified that he'd seen Schoenberg sell marijuana was Woodbury. No one else testified. Well, I believe that Carol Wiseman, his girlfriend, was talking about this. We call this not only a conspiracy for marijuana distribution, but also money laundering, which went hand in hand because the conspiracy in which he had joined, in our theory, the proceeds were being wired by Mr. Woodbury's request to Mr. Schoenberg, and he was doing that. That's very difficult to separate out the marijuana charge versus the money laundering charge, and I think they both support each other, Your Honor, in that Schoenberg was being paid by Woodbury either in cash or by getting his marijuana bill reduced by sending these money wires down to the Arizona area to pay for the marijuana that had come up, and that Schoenberg was, in fact, receiving. If it was just a straight simple one drug case, but when you look at the totality of the circumstances, Your Honor, and the actual evidence introduced at trial, I believe that it's clearly shown that this conspiracy existed not only as to the drugs, but as to the money laundering itself, and they're tied together and linked in that overall drug conspiracies, although they're charged as two separate ones. Are you suggesting that even if there might have been a violation of the Confrontation Clause, that the evidence was overwhelming enough to cause it not to be error? Yes, and I think that goes to Judge Fischer's earlier answer that he asked of Mr. Huvestal. If you apply that standard beyond a reasonable doubt, I think the Court, even though there was not a multitude of witnesses, there's sufficient evidence to show that it was overwhelming in relation to Schoenberg for the conviction of the two counts to which he was charged, Your Honor. Thank you. Was the argument – I should have looked at this, but I haven't. Was the argument about the import of paragraph 15 where Mr. Huvestal said, I was able to hit the nail on the head, was that argument articulated to the jury during closing? In those precise terms, or I think as Judge Kleinfeld put it more succinctly, that there were really two trials going on, was that argument urged to the jury? The government did not. No, no, not you. I mean, did the defense articulate that strand of its argument? I cannot answer that question, Your Honor. I apologize for that. Well, the reason I'm asking it is that you have argued that he got essentially all he needed in by establishing, as is typically the case under Rule 35, the type of agreement to show the potential for bias on the part of the witness. That's understandable. The question here is, is it more potent if the defense can lay the foundation for the kind of argument which says, again, as Judge Kleinfeld put it best, that there are really two trials, and as far as the one the witness cares about, it's you as the prosecutor who is the determiner of credibility. So I'm trying to understand what he was able to use that he did get into the record. See, that's what I mean. I think in the very first instance on the cross-examination of Woodbury, he read those paragraphs into the record. He was able to read those to the witness. And it's right in the record where the import, although the plea agreement itself was not introduced into evidence, the import of those two particular paragraphs were read into the record, and Mr. Woodbury was questioning upon those. So he established that basis upon which he could argue. But the problem is that the transcript, when he comes back to pursue it, you object, and it's sustained. And the Court says, stop that, Mr. Huvestal. I am not going to tell you any more. If the government pursuant to that plea agreement determines or they believe in their sole discretion he's rendered substantial assistance, they can file a motion before me. That doesn't mean a thing about what I'm going to do with it. And then Mr. Huvestal says, I agree with that, Your Honor, but it goes to his motive for assisting. Yes, it does, but I'm telling you not to talk about that. It's the government's obligation to determine the truth because it isn't. It's the jury's determination in this case. And with that kind of ruling from the judge, it seems to me I would be reluctant to then pursue the kind of argument that we've been talking about this morning. Well, Your Honor, this appeared many times. And I know that Judge Siebel in many rulings, it's apparent to me from the transcript that that was the main issue, and I believe when he instructed in a two-liner, and he looked at the jury and said, it's your determination as to who's telling the truth. But this has come up before, and I know there's at least one unreported decision out of Montana, and I know that we cannot use it for precedent, but it comes up all the time. And I know Judge Siebel in an unreported case recently came down. U.S. v. Duval, D-U-V-A-L, a panel not of your making, upheld Judge Siebel's restriction on cross-examination talking about penalties. And when Mr. Huvestal was citing the Chandler case, that was a unique thing, talking about penalties, not about the narrow issue of the judge trying to control the trial court and the presentation of evidence before a jury, not meet the jury, so that they know it was their role to determine the truth. And if anything else happened after the effect, that was another thing. But Mr. Huvestal was able, through his effective cross-examination, to bring out those points, with the exception of saying the United States is not saying whether Mr. Woodbury is telling the truth or not. Thank you, counsel. Thank you, Your Honor. Once again, I appreciate the courtesy. And again, I also appreciate the courtesy. Just before we came in, we were cross-examining witnesses in this other trial that we had. So one part of the record that I think is important for the court to look at is the argument that is set forth on, I think, page 155 of the transcript of the excerpt of the record. And that is where Mr. beginning at line 15, where the court says that it has nothing to do with who is the arbiter of whether or not this witness is telling the truth in front of the jury. And then, of course, I state to the court, but the logical conclusion or extension of his understanding of this paragraph is that because the United States is a party to this lawsuit and because the United States has an interest in its out, that is, the conviction of Mr. Schoenberg, the witness will think that if he does not assist the United States in obtaining a conviction, that his plea agreement may be voided and he may not get his Rule 35 motion. I think that is the heart of the issue in this instance. And I think that it goes beyond harmless error, even if we are applying that harmless error standard, and it's a constitutional violation. Thank you. Thank you, counsel. United States v. Schoenberg is submitted. United States v. Schoenberg is submitted. Thank you.
judges: D.W. Nelson, Kleinfeld, Fisher